CRAIG A. GELFOUND (SBN 176378)
craig.gelfound@afslaw.com
KIRSTEN A. HART (SBN 258433)
Kirsten.hart@afslaw.com
JESSICA B. DO (SBN 317517)
jessica.do@afslaw.com
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013
Telephone:  213.629.7400
Facsimile:   213.629.7401

Attorneys for Defendant and Counter-Claimant
BRIDGELUX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BJB ELECTRIC LP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRIDGELUX, INC.,<br><br>　　　　　Defendant.<br><br>─────────────────<br><br>BRIDGELUX, INC,<br><br>　　　　　Counter-Claimant,<br><br>　　v.<br><br>BJB ELECTRIC LP,<br><br>　　　　　Counter-Defendant. | Case No. 22-cv-01886-RS<br><br>**DEFENDANT AND COUNTER-CLAIMANT BRIDGELUX, INC.'S BRIEF REGARDING PAROL EVIDENCE**<br><br><br><br><br><br>Judge:  Hon. Richard Seeborg<br>Magistrate:  Hon. Laurel Beeler<br><br>Trial Date: August 21, 2023<br>Date Filed: March 24, 2022 |

## I. THE ISSUE PRESENTED TO THE COURT

At issue is whether Plaintiff and Counter-Defendant BJB Electric LP ("BJB" or "Plaintiff") "obtain[ed] orders" for 15 million holders (the "Minimum Requirement") during the Cost Sharing Period as required under Article 2 of the Letter Agreement. Defendant and Counter-Claimant Bridgelux, Inc. ("Bridgelux" or "Defendant") claims that the language is clear and unambiguous and means what it says. Once Bridgelux submitted orders to BJB for the Minimum Requirement of holders during the Cost Sharing Period, it satisfied its obligation under the Letter Agreement. BJB erroneously claims that the term "obtain orders" is ambiguous and parol evidence is necessary to resolve the supposed ambiguity. According to BJB, the parol evidence will show that the language in the Letter Agreement requires not only that Bridgelux must submit orders for 15 million holders during the Cost Sharing Period, but that BJB must also accept the orders *and* deliver the ordered holders to Bridgelux within the Cost Sharing Period. This tortured interpretation of the Letter Agreement is based on an improper attempt by BJB to read nonexistent requirements into the Letter Agreement while ignoring its express terms. The Letter Agreement involves sophisticated parties, was negotiated with the aid of counsel, and is devoid of ambiguity, and thus, this court should not allow BJB to rely on self-serving, biased testimony and other unreliable evidence to vary or avoid a contract that no longer satisfies BJB.

## II. RELEVANT PROCEDURAL BACKGROUND

A three-day bench trial was conducted in the above-captioned matter beginning August 21, 2023. Consistent with California law, the Court provisionally received, without actually admitting, all credible evidence to determine whether or not the Letter Agreement is reasonably susceptible to the interpretation urged by a party. *See Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.*, 69 Cal.2d 33, 38, (1968); *Blumenfeld v. R. H. Macy & Co.*, 92 Cal.App.3d 38, 45 (1979). Now, the Court must decide in light of this extrinsic evidence whether the language is

reasonably susceptible to the interpretation urged by the parties.

If the Court decides in light of this extrinsic evidence that the language is reasonably susceptible to the interpretation urged by a party, then the Court may admit such extrinsic evidence to interpret the language. On the other hand, if the Court decides in light of this extrinsic evidence that the language is not reasonably susceptible to the interpretation urged by a party, then the evidence is irrelevant and inadmissible to interpret the contract. *See Tahoe National Bank v. Phillips*, 4 Cal.3d 11, 23 (1971). Unless the language is "reasonably susceptible" to the proposed meaning, extrinsic evidence cannot even be considered to explain or otherwise shed light upon the parties' intent. *Gerdlund v. Electronic Dispensers International*, 190 Cal.App.3d 263, 272 (1987).

At the conclusion of the trial, the Court requested post-trial briefs from the parties on the parol evidence issue. Specifically, the Court requested that each party identify parol evidence that it believes is admissible to interpret the Letter Agreement and the grounds for admissibility. Trial Tr., Vol. 2 at 248:1-15; Vol. 3 at 416:12-417:1. However, as Bridgelux has repeatedly pointed out, the Letter Agreement is clear and unambiguous, and therefore, no parol evidence is required to interpret the contractual language, except certain evidence of the circumstances under which the agreement was made under section 1856(g) of the California Code of Civil Procedure will aid the Court with the interpretation of the Letter Agreement.

BJB seeks to admit three categories of parol evidence: (1) the subjective understanding of the Letter Agreement by the parties; (2) the course of performance of the parties under section 2202(a) of the California Commercial Code; and (3) the circumstances surrounding the negotiation of the Letter Agreement under section 1856(g) of the California Code of Civil Procedure. In the pages that follow, Bridgelux will explain by category why BJB's parol evidence is inadmissible to interpret the Letter Agreement.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 22-cv-01886-RS

- 3 -

DEFENDANT AND COUNTER-CLAIMANT
BRIDGELUX, INC.'S BRIEF REGARDING
PAROL EVIDENCE

## III. THE PAROL EVIDENCE RULE SET FORTH IN THE CALIFORNIA COMMERCIAL CODE APPLIES TO THE INSTANT AGREEMENT FOR THE SALE OF GOODS.

It is undisputed that the Letter Agreement is for the sale of goods. As such, the applicable parol evidence rule is found in Section 2202 of the California Commercial Code ("Section 2202"). *Hebberd-Kulow Enterprises, Inc. v. Kelomar, Inc.*, 218 Cal.App.4th 272, 279 (2013) (recognizing that "Section 2202 removes written agreements for the sale of goods from the operation of Code of Civil Procedure section 1856, the general parol evidence statute.") (citing 4 Witkin, Summary of Cal. Law (10th ed. 2005) Sales, § 33, p. 46). Section 2202 provides as follow:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> (a) By course of dealing, course of performance, or usage of trade; and
>
> (b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

## IV. THE SUBJECTIVE INTENT OF THE PARTIES SHOULD BE EXCLUDED.

BJB seeks to introduce the self-serving, biased trial testimony of Joseph Laufer, BJB's former president, and Albert Pruenster, BJB's current president, to support its interpretation of the Letter Agreement. These witnesses testified at trial that they understood the language that BJB must "obtain orders" for the Minimum Requirement during the Cost Sharing Period to mean that Bridgelux must not only submit orders to BJB for the Minimum Requirement, but BJB must accept those orders *and* deliver the holders to Bridgelux all within the Cost Sharing Period.

Section 2202(a) of the California Commercial Code only allows three types of evidence – usage of trade, course of dealing, and course of performance – to explain or supplement a term contained in a writing.  The parties' subjective understanding of the term – creating additional obligations of the parties from whole cloth – does not fit into any of these categories, and therefore, is barred under the applicable parol evidence rule.

Section 2202(a) is consistent with the rules of contract interpretation under California law.  "California recognizes the objective theory of contracts [citation omitted], under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation' [citation omitted]." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) ("*Founding Members*").  Under this objective theory, the "parties' undisclosed intent or understanding is irrelevant to contract interpretation." *Id.*

Accordingly, the testimony by Messrs. Laufer and Pruenster regarding their subjective understanding of the meaning of "obtain orders" is inadmissible for the purpose of interpreting the Letter Agreement.

## V. BJB'S EVIDENCE CONCERNING THE PURPORTED COURSE OF PERFORMANCE SHOULD BE EXCLUDED.

BJB's "course of performance" parol evidence should be excluded because it contradicts the terms of the Letter Agreement, does not support a "reasonably susceptible" interpretation of the term "obtain orders" as proposed by BJB, and renders certain contract provisions meaningless.

First, BJB's parol evidence impermissibly contradicts the terms of the Letter Agreement.  Pursuant to Section 2202(a) of the California Commercial Code, course of performance evidence may be used only to explain or supplement a term, provided such evidence does not contradict the terms of the written agreement.  Cal. Comm. Code § 2202(a); *see also Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1250 (N.D.

Cal. 2017) (noting that course of performance evidence can supplement or explain, but not contradict the language of the contract.); *Bert G. Gianelli Distrib. Co. v. Beck & Co.*, 172 Cal. App. 3d 1020, 1040 (1985), disapproved of on separate grounds by *Dore v. Arnold Worldwide, Inc.,* 39 Cal. 4th 384, 139 P.3d 56 (2006) ("California Commercial Code Section 2202 permits parol or extrinsic evidence of a usage of trade to explain or supplement—but not contradict—a writing intended by the parties as a final expression of their agreement.").

Here, BJB seeks to introduce purported evidence of "course of performance" showing that the purchase orders submitted by Bridgelux prior to purchase order P.O. 801-01 all provided for delivery within the Cost Sharing Period. *See* Tr. Ex. 17 [Compilation of Purchase Orders]. BJB claims this parol evidence demonstrates the term "obtain orders" in the Letter Agreement should be construed to include, inter alia, "delivering holders." BJB's interpretation, however, impermissibly contradicts express terms of the Letter Agreement.

Article 10 of the Letter Agreement incorporates by reference Bridgelux's standard terms and conditions into the Letter Agreement. Section 4.1 of the Letter Agreement provides that Bridgelux sets the delivery schedule, subject to the Parties' agreement under Article 1 of the Letter Agreement. BJB's proposed interpretation of the Letter Agreement, requiring *delivery* of the Minimum Requirement during the Cost Sharing Period, would limit and interfere with the express rights provided to Bridgelux under Section 4.1. *See e.g., Apex LLC v. Sharing World, Inc.,* 206 Cal. App. 4th 999, 1015 (2012) (defining the term "inconsistency" as "the absence of reasonable harmony in terms of the language and respective obligations of the parties").

Second, BJB's offered "course of performance" evidence does not actually support what it claims. For the sake of argument, BJB's parol evidence supports (at best) that the parties intended for Bridgelux to take delivery shortly after a purchase

order is submitted[1] by Bridgelux for a relatively small quantity of holders.[2] To say that this somehow created a "course of performance" requiring all deliveries of the holders to occur within the Cost Sharing Period in order to qualify for the Minimum Amount is an unsupported logical leap. When viewed in light of the extrinsic, the Letter Agreement is not "reasonably susceptible" to this interpretation offered by BJB and is therefore inadmissible. *See Gerdlund,* 190 Cal. App. 3d at 272.

Third, BJB's interpretation of the term "obtained orders" based on its offered parol evidence would improperly render certain contract terms meaningless. For example, in *Tanita Corporation of America v. Belfour, Inc.*, No. 06 C 4459, 2009 WL 54509, at *5 (N.D. Ill. Jan. 6, 2009), the agreement between the parties required the plaintiff to "purchas[e] a minimum number of electronic scales ... during the three year exclusivity period," but also required the plaintiff to provide 10-12 weeks lead time for each order. The defendant argued that the term "purchase" meant that the scales had to be paid for by the plaintiff *and* shipped by the defendant. *Id.* at *5. The court reasoned that the defendant's interpretation would make it impossible for the plaintiff to "purchase" any scales during the first and last 12 weeks of the exclusivity period thereby rendering the "three-year exclusivity period" meaningless. *Id.*

Similarly, here, BJB's interpretation of "obtained orders" (which, per BJB, means that Bridgelux placed an order, BJB accepts the order *and* BJB delivers it) would render the Cost Sharing Period meaningless. *See* Tr. Ex. 1 at Art. 1. Like the orders in *Tanita,* the purchase orders prior to PO 801-01 show a gap in time

---

[1] Trial Exhibit Number 17, a compilation of purchase orders prior to PO 801-01, shows that there were varying lengths of time for the delivery dates including five days (Tr. Ex. 17-41), nine days (Tr. Ex. 17-48), sixteen days (Tr. Ex. 17-28), thirty-four days (Tr. Ex. 17-222), and sixty days (Tr. Ex. 17-215) to name a few. *See* Tr. Ex. 17.

[2] Trial Exhibit No. 17 also shows that these purchase orders were for relatively small quantities when compared to the over 13 million ordered in PO 801-01. *See id., cf.* Tr. Ex. 18 [PO 801-01]. Due to the difference in quantity, it is reasonable that the delivery schedule for PO 801-01 would extend significantly beyond the delivery periods for the preceding purchase orders. Notably, there is nothing in the Letter Agreement or Terms and Conditions which limits Bridgelux's right to place an order a quantity of its choosing.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 22-cv-01886-RS

- 7 -

DEFENDANT AND COUNTER-CLAIMANT
BRIDGELUX, INC.'S BRIEF REGARDING
PAROL EVIDENCE

between the order date and delivery date. *See* Tr. Ex. 17. This makes sense since, as the evidence proved, BJB did not carry inventory, but rather manufactured holders after receiving orders, including manufacturing the component parts in Germany, and then shipping them to BJB China for assembly. This process understandably takes time. Thus, if the term "obtained orders" also meant "deliver holders" then the four-year Cost Sharing Period would be improperly truncated since delivery is not possible within the beginning and end phases.

Accordingly, course of performance evidence, including but not limited to all purchase orders submitted by Bridgelux during the Cost Sharing Period prior to purchase order PO 801-01 (Tr. Ex. 17) and related testimony, should be inadmissible for the purpose of interpreting the Letter Agreement.

## VI. BRIDGELUX'S INTERPRETATION OF THE LETTER AGREEMENT IS SUPPORTED BY PAROL EVIDENCE ADMITTED UNDER SECTION 1856(G).

BJB seeks to introduce the testimony of Messrs. Laufer and Pruenster pursuant to California Code of Civil Procedure section 1856(g) ("Section 1856(g)") regarding the circumstances surrounding the negotiation of the Letter Agreement to show BJB's intention to recoup its parent company's anticipated investment within four years. However, this evidence at best supports BJB's subjective understanding of the Letter Agreement. There is no evidence to indicate that this was a shared understanding by all parties. While Bridgelux agrees that Section 1856(g) applies, this evidence should be excluded because BJB's subjective intent or understanding is irrelevant to contract interpretation. *Winograd v. American Broadcasting Co.*, 68 Cal. App. 4th 624, 632 (1998); *Berman v. Bromberg*, 56 Cal. App. 4th 936, 948 (1997). "It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*, 164 Cal.App.3d 1122, 1127 (1985).

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 22-cv-01886-RS                                                          DEFENDANT AND COUNTER-CLAIMANT
                                        - 8 -                                    BRIDGELUX, INC.'S BRIEF REGARDING
                                                                                 PAROL EVIDENCE

Bridgelux seeks to admit parol evidence under Section 1856(g) to provide further context for its interpretation of the Letter Agreement. Such evidence includes, but is not limited to, parol evidence demonstrating that the parties understood at the time the agreement was made that BJB would not carry inventory, but rather would manufacture holders after receiving an order, including manufacturing the component parts in Germany, and then shipping them to BJB China for assembly, thereby resulting in lead time for delivery of holders following an order.

## VII. CONCLUSION

For the foregoing reasons, the BJB's proposed parol evidence is inadmissible under both Section 2202 and Section 1856 due to the biased and subjective character of the proposed evidence.

Dated: September 18, 2023                    **ARENTFOX SCHIFF LLP**

By: */s/ Craig A. Gelfound*
Craig A. Gelfound
Kirsten A. Hart
Jessica B. Do
Attorneys for Defendant and
Counter-Claimant
BRIDGELUX, INC.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 22-cv-01886-RS

- 9 -

DEFENDANT AND COUNTER-CLAIMANT
BRIDGELUX, INC.'S BRIEF REGARDING
PAROL EVIDENCE